Charles L. SHIMKUS, Plaintiff,

v.

Kenneth S. APFEL, Commissioner
of Social Security, Defendant.

No. Civ. 3–98–CV–10155.

United States District Court,
S.D. Iowa,
Davenport Division.

July 28, 1999.

Michael Depree, Bowman & Depree, Davenport, IA, for Charles L Shimkus, plaintiff.

William C Purdy, United States Attorney, Des Moines, IA, for Commissioner of Social Security, agent, Kenneth Apfel, defendant.

## ORDER

LONGSTAFF, Chief Judge.

Plaintiff seeks review of the Commissioner of Social Security's decision denying him supplemental security income ("SSI") benefits under Title XVI of the Social Se-

curity Act, 42 U.S.C. §§ 1381 *et seq.* Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), this Court may review the final decision of the Commissioner.[1]

## I. PROCEDURAL HISTORY

Charles Shimkus, age 53 on the date of the hearing, applied for SSI benefits on November 24, 1995, alleging disability as of that date.[2] Plaintiff's claim was denied initially and on reconsideration. Upon plaintiff's timely request, a hearing was held before an administrative law judge ("ALJ"). In a written order dated July 25, 1997, the ALJ determined plaintiff was not "disabled" as defined in the Act. On September 5, 1998, the Appeals Council of the Social Security Administration denied plaintiff's request for review. The decision of the ALJ thus stands as the final decision of the Commissioner, Plaintiff filed this action for judicial review on October 9, 1998.

## II. FINDINGS OF THE COMMISSIONER

The ALJ found the medical evidence to establish that plaintiff has:

Right inguinal hernia, status post-left inguinal hernia repair, hydrocele repair, hypertension, history of chest pain, history of gastritis and esophagitis, status post-concussion syndrome with dizzy spells, low average intelligence, history of adjustment disorder with depressed mood and personality trait disorder, and history of alcohol abuse, but that he does not have an impairment or combination of impairments listed in, or medically equivalent to one listed in Appendix 1, Subpart P, Regulations No. 4.

Tr. 22. The ALJ discounted plaintiff's subjective complaints as not fully credible.

---

1. Plaintiff filed his original memorandum on January 19, 1999. Presumably in an attempt to comply with previous directives from this Court, plaintiff filed a motion for leave to file an amended memorandum on April 2, 1999. There is no indication defendant would be prejudiced by plaintiff's amended memorandum. Accordingly plaintiff's motion for leave to amend is GRANTED.

2. Plaintiff previously had been granted SSI benefits for a period of disability commencing January 14, 1983. Tr. 2–5–31. Benefits ceased in 1994 when plaintiff received an inheritance.

Tr. 22. The ALJ found plaintiff has the residual functional capacity ("RFC") to:

lift .0 pounds repeatedly, 20 pounds occasionally. He can not repetitively bend, stoop, squat, kneel, and crawl. He must not be exposed to excessive heat or humidity. He should avoid heights and moving machinery. He can do simple, routine, repetitive work not requiring very close attention to detail and only occasional contact with the public. He would require work involving occasional supervision at not more than a regular pace, and only mild to moderate stress.

Tr. 22. The ALJ noted that plaintiff has no past relevant work, and accordingly, no transferable skills. Tr. 22–23. The ALJ nevertheless concluded plaintiff's exertional and nonexertional impairments do not prevent him from performing a significant number of jobs in the national economy. Tr. 23. These jobs include: arcade attendant, parking cashier and officer helper. Tr. 23. The ALJ therefore concluded plaintiff was not under a "disability" as defined in the Social Security Act "at any time through the date of this decision." Tr. 23.

## III. APPLICABLE LAW AND DISCUSSION

### A. Governing Law

■ A court must affirm the decision of the Commissioner if substantial evidence on the record as a whole supports the decision. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Johnson v. Chater,* 108

F.3d 942, 943 (8th Cir.1997). A court may not reverse merely because substantial evidence would have supported an opposite decision. *Locher v. Sullivan,* 968 F.2d 725, 727 (8th Cir.1992). "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Mapes v. Chater,* 82 F.3d 259, 260 (8th Cir.1996).

### B. Whether the ALJ Erred in Discounting Physicians' Statements

■ Plaintiff first argues the ALJ failed to give substantial weight to restrictions imposed by psychiatrist Steven Chang, M.D., who evaluated plaintiff in June 1996 at the request of the state agency. Following one fifty minute interview, Dr. Change diagnosed plaintiff as suffering from: "1) Panic disorder without agoraphobia; 2) Dysthymic disorder; 3) Alcohol abuse; 4)[P]ersonality disorder, antisocial." Tr. 392. With regard to plaintiff's RFC, Dr. Chang opined that plaintiff "would have marked limitation carrying out work, maintain attention, concentration and pace. He would have moderate difficulty getting along with supervisors & coworkers." Tr. 392.

Plaintiff categorizes Dr. Chang as a treating physician based on the fact a colleague of Dr. Chang's at the Vera French Mental Health Center, Kedar Bhasker, M.D., treated plaintiff for depression between 1982 and 1983, and for a brief period in 1984 to help control his temper.[3] Tr. 389–90. The record is unclear whether and to what extent Dr. Chang had an opportunity to review Dr. Bhasker's office notes prior to forming his opinions.[4] Dr.

---

**3.** In a March 15, 1996 letter to the state agency, Dr. Bhasker stated he last saw plaintiff briefly in 1984, and indicated he would need more recent contact with plaintiff in order to provide an accurate functional assessment. Tr. 390.

**4.** Ironically, on page 10 of his amended memorandum, plaintiff cites to 20 C.F.R. § 404.1527(d)(2)(i) for the premise that "the longer a treating source has treated you and

the more times you have been seen by a treating source, the more weight we will give the source's medical opinions." In the present case, however, the physician who actually treated plaintiff, Dr. Bhasker, declined to opine on plaintiff's mental state because it had been *more than twelve years* since he had seen plaintiff. Dr. Chang did not treat plaintiff himself, but rather, performed a one-time evaluation at the request of the state agency. The particular section of the regulation cited

Chang states simply: "Information came (sic) with this appointment was reviewed." Tr. 391.

■ Assuming arguendo Dr. Chang is appropriately classified as a treating physician based on his current association with Vera French, the Court nevertheless finds the ALJ did not err in discounting Dr. Chang's opinions. The Eighth Circuit has held that "[w]hile the opinions of treating physicians are entitled to special weight, they do not automatically control, since the record must be evaluated as a whole." *Bentley v. Shalala*, 52 F.3d 784, 785–86 (8th Cir.1995). After evaluating the other evidence of record, the ALJ agreed with the state medical consultants that Dr. Chang's opinions were "largely based on history and the claimant's report which were in conflict with the claimant's activities." Tr. 20. Contrary to plaintiff's argument, the fact the ALJ may have given greater weight to the opinions of nonexamining consultants than to Dr. Chang is not reversible error provided the ALJ explained his reasons for doing so. *See, e.g., Davis v. Schweiker*, 671 F.2d 1187, 1189 (8th Cir.1982) (appropriate to rely on non-examining physician when his opinion was compatible with other evidence in record, and treating physician's opinion conclusory and conflicting). In the present case, Dr. Chang saw plaintiff on only one occasion, during which he performed no diagnostic testing, and prescribed no treatment regimen. It is also unclear whether Dr. Chang relied on the results of previous testing to form his diagnosis. *See, e.g., Haggard v. Apfel*, 175 F.3d 591, 595 (8th Cir.1999) (treating physician's opinion afforded less weight when not supported by diagnostic data); *Beeler v. Bowen*, 833 F.2d 124, 126–27 (8th Cir.1987) (absence of objective medical evidence one factor to consider in evaluating physician's opinion). The Court therefore finds that substantial evidence supports the ALJ's decision not to adopt the restrictions imposed by Dr. Chang.

## C. Whether ALJ's Opinions are Proven by Medical Evidence

■ Plaintiff next argues that, presumably at step five of the sequential evaluation process, the ALJ failed to prove by medical evidence that plaintiff has the RFC to perform the jobs cited by the vocational expert. Again, this Court does not agree. The Eighth Circuit has held that "[t]he need for medical evidence ... does not require the Secretary to produce additional evidence not already within the record. '[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.'" *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir.1995).

Initially, the Court notes that plaintiff has not received treatment either for a physical or mental impairment for several years, thus leaving the disability examiners with little choice but to obtain consultative evaluations.[5] With regard to plaintiff's mental state, clinical psychologist Stephen Singley, M.A., who examined plaintiff in July 1996, found "no impression of significant mental deficiency." Tr. 395. Mr. Singley administered the Wechsler Adult Intelligence Scale–Revised ("WAIS–R") during his examination, and measured plaintiff's intelligence in the low-average range, with subtest scarter "consistent and unremarkable." Tr. 395. Contrary to the report provided by Dr. Chang, Mr. Singley clearly indicates that in forming his opinions, he read and considered previous psychiatric reports from Vera French and the University of Iowa Hospitals and Clinics. Tr. 393. Mr. Singley's opinion is entirely consistent with the ALJ's determination of

---

by plaintiff therefore *de racts from,* rather than *supports* his claim.

**5.** This fact also militates against a finding of disability in and of itself. *See Gwathney v. Chater,* 104 F.3d 1043, 1045 (8th Cir.1997)

("[Claimant's] failure to seek medical assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits").

plaintiff's RFC. *See* Tr. 22 (limiting plaintiff to "simple, routine, repetitive work not requiring very close attention to detail and only occasional contact with the public.").

The Court also finds the ALJ's determination of plaintiff's *physical* RFC to be supported by medical evidence. In September 1996, Arthur Searle, M.D., evaluated plaintiff at the request of the state agency. Dr. Searle noted plaintiff "routinely walks a mile to the grocery store and back home a mile with a bag of groceries," Tr. 404, a fact the ALJ appropriately found detracts from complaints of disabling pain due to his hernia. Tr. 18. Dr. Searle also observed "extreme callouses on his feet ... and no evidence of muscle atrophy" which further suggests plaintiff is physically active. Dr. Searle concluded plaintiff is able to stand, move about, walk and sit without difficulty. Tr. 406. He further opined plaintiff "can do occasional stooping, kneeling and crawling." "He can climb stairs, but because of his balance difficulty, he shouldn't be on ladders." Tr. 406. These restrictions are fully consistent with those listed in the ALJ's opinion. Tr. 22.

■ The Court finds the ALJ appropriately discounted the five pound lifting limitation attributed by Dr. Searle to plaintiff's hernia. Tr. 406. As noted by the ALJ, plaintiff's current right hernia was diagnosed as early as 1992, *see* Tr. 342, before his previous SSI benefits and health insurance had been terminated. When asked during the hearing why plaintiff did not have surgery on his right hernia after he received his inheritance, plaintiff responded that he could not afford the surgery. Tr. 56. Plaintiff's wife further clarified that they *chose* to use their money for other purposes. Tr. 92. The applicable agency regulation provides that failure to follow prescribed treatment will result in a denial or termination of benefits, unless the claimant has an "acceptable reason" for failing to follow the prescribed treatment. 20 C.F.R. § 404.1530. Choosing to spend one's money in alternative ways is not "an acceptable reason." *Cf. Lewis v.*

*Califano,* 616 F.2d 73, 77 (3rd Cir.1980) (refusing to undergo surgery to remove tumor due to religious belief in faith healing was "acceptable reason"); *Nichols v. Califano,* 556 F.2d 931, 932 (9th Cir.1977) (claimant not unjustified in refusing third surgery when prior surgeries had been unsuccessful in correcting condition, and third operation not advised by family physician).

The Court acknowledges there is no evidence surgery was expressly *prescribed* for his right hernia. Based on his and his wife's hearing testimony, however, and the fact plaintiff had successful surgery on a left inguinal hernia in the past, the Court is confident plaintiff was aware of his options. Even if 20 C.F.R. § 404.1530 is inapplicable, the fact plaintiff voluntarily chose to live with his hernia, while maintaining a relatively active lifestyle, is substantial evidence that the pain is not truly disabling. The Court therefore finds the medical evidence in the record provided "a sufficient basis for the ALJ's decision," that plaintiff was not disabled during the period of time covered by his present application. *Anderson v. Shalala,* 51 F.3d at 779 (internal citation omitted).

D. Whether ALJ's Opinion is Internally Inconsistent

■ Lastly, plaintiff contends his ultimate findings regarding plaintiff's RFC are inconsistent with his completion of the Psychiatric Review Technique Form. Specifically, the ALJ found plaintiff slightly restricted in activities of daily living and maintaining social functioning", and slightly to moderately restricted in: "Deficiencies of Concentration, Persistence or Pace Resulting in Failure to Complete Tasks in a Timely Manner...." *See* Tr. 32. Plaintiff argues the ALJ did not incorporate potential deficiencies of concentration and persistence into his RFC findings, although he did specify that plaintiff should work at no more than a regular pace. Tr. 22. This Court disagrees, finding that the ALJ's conclusion plaintiff was limited to "simply,

routine, repetitive work not requiring very close attention to detail" adequately accounts for a slight to moderate restriction in concentration and persistence. Tr. 22.

## IV. CONCLUSION

For the reasons outlined above, IT IS ORDERED that plaintiff's April 2, 1999 motion for leave to an end is GRANTED. IT IS FURTHER ORDERED that the decision of the Commissioner is AFFIRMED. The Clerk of Court is directed to enter judgment in favor of defendant and against plaintiff.